WILKINSON, Chief Judge,
concurring in the denial of reconsideration:
The matter of attorneys’ fees has been extensively debated in the en banc decision of the court and I have no desire to belabor it. In view of my good colleague’s dissent, however, I shall briefly state the basis for my view that a departure from the American rule, whereby each side pays its own lawyers, is not warranted with respect to the unitary status determination.
Such a departure is not justified for the simple reason that Congress has not authorized it. The Supreme Court has made clear that Congress has not “extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted.” Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Under the American rule, “we follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority.” Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 1839, 149 L.Ed.2d 855 (2001) (internal quotation omitted). There is no such authority here.
The dissent attempts to analogize the unitary status proceedings to an action under 42 U.S.C. § 1983, for which attorney’s fees would be available to prevailing parties at the discretion of the court under 42 U.S.C. § 1988. What we have here, however, is the exact opposite of a § 1983 action. The essence of a § 1983 action is that the defendant has violated the plaintiffs federal rights under color of state law. In contrast, the entire point of a unitary status determination is to prove that the school district is in compliance with federal law. And Congress has simply not authorized us to impose attorney’s fees on a party whose actions have been adjudged compliant with federal statutes and our Constitution.
While the dissent would have us believe that the Grant and Capacchione plaintiffs simply picked up where the Swann plaintiffs left off, this is simply not the case. The focus of their respective efforts was quite different. The Swann plaintiffs sought to prove the school board in violation of the bedrock federal mandate that no student be denied an education on account of his or her race. The unitary status proceedings sought to determine, by contrast, that the rights of all school children under federal law had been vindicated and achieved.
*816 It is important that the judicial system not blow hot and cold with respect to the litigants who come before it. For many decades the courts impressed upon the Charlotte-Mecklenburg school district the singular importance of desegregating its public schools and affording each and every child an equal educational opportunity without regard to race. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) (“[S]chool authorities are clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch.”) (internal quotation omitted). Now that this goal of unitariness has been reached, it would be inconsistent in the extreme to punish the school board for doing the very thing the courts, have all along insisted that it do.
My good dissenting brother urges us to view this matter as one of equity or policy. I readily agree that the Grant and Capac-chione plaintiffs have performed a substantial public service in achieving the unitary status determination and in returning the school system to the control of local authorities. As a matter of equity, however, there is also something to be said for looking to the future, putting this litigation behind us, and spending public funds on the education of school children rather than on opposing lawyers’ bills. The dissent predicts that unitary status proceedings will become unaffordable in the absence of fee shifting, but it is quite possible that school boards in other locations will be moved to free themselves from court orders on their own without the need for private interveners to enter the suit. In all events, these are questions of pure policy and underscore the inadvisability of courts debating the pros and cons of fee shifting in the absence of a congressional declaration.
It is simply untenable to impose a large fee obligation upon a public school district for desegregating its schools. Congress has not sanctioned such a course of action. It would mark a cruel sequel to the Brown decision if, at the end of the day, federal courts were to punish the successful completion of the desegregation process with an unauthorized departure from the American rule.